IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MALINDA M. SHAFFER,                    )
                                       )
                    Plaintiff,         )
                                       )
v.                                     )        Civil Action No. 05-1665
                                       )
JO ANNE B. BARNHART,                   )
COMMISSIONER OF SOCIAL SECURITY,       )
                                       )
                    Defendant.         )

MEMORANDUM ORDER

CONTI, District Judge

### Introduction

Pending before the court is an appeal from the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying the claim of Malinda M. Shaffer ("plaintiff") for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 423, *et seq.,* and supplemental social security ("SSI") under Title XVI of the SSA, 42 U.S.C. §§ 1381, *et seq.* Plaintiff contends that the decision of the administrative law judge (the "ALJ") that she is not disabled, and therefore not entitled to benefits, should be reversed because the decision is not supported by substantial evidence, and that the case should be remanded for an award of benefits. Defendant asserts that the decision of the ALJ is supported by substantial evidence. The parties filed cross-motions for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. By reason of the ALJ's decision being supported by substantial evidence, defendant's motion for summary judgment shall be granted and plaintiff's motion shall be denied.

### *Procedural History*

Plaintiff protectively filed her applications for SSI on May 2, 2002, and DIB on July 26, 2002 (R. at 87-91, 379-82.)  Plaintiff asserted a disability since July 4, 2001, by reason of chronic pain, fatigue, muscle tightening, headaches, and shooting pains suffered as a result of an automobile accident. (R. at 88-91.)  She was denied at the initial level (R. at 69-74, 383-87) and then filed a request for a hearing.  (R. at 75.)  On March 17, 2004, a hearing was held before the ALJ.  (R. at 31-68.)  Plaintiff appeared at the hearing and testified.  (R. at 31-68.)  A vocational expert (the "VE"), also testified.  (R. at 13.)  Plaintiff was represented by an attorney at the hearing (R. at 13.)   In a decision dated June 24, 2004, the ALJ determined that plaintiff was not disabled and, therefore, not entitled to benefits.  (R. at 13-20.)  Plaintiff timely requested a review of that determination, and by letter dated October, 17, 2004, the Appeals Council denied the request for review.  (R. at 4.)  Plaintiff subsequently commenced the present action seeking judicial review.

### *Legal Standard*

The Congress of the United States provides for judicial review of the Commissioner's denial of a claimant's benefits.  42 U.S.C. § 405(g).  This court must determine whether there is substantial evidence which supports the findings of the Commissioner.  42 U.S.C. § 405(g).  "Substantial evidence is 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate.'"  Ventura v. Shalala, 55 F. 3d 900, 901 (3d Cir. 1995)(quoting Richardson v. Perales, 402 U.S. 389 (1971)).  This deferential standard has been referred to as "less than a preponderance of evidence but more than a scintilla."  Burns v. Burnhart, 312 F. 3d 113, 118 (3d Cir. 2002).  This standard, however, does not permit the court

2

to substitute its own conclusions for that of the fact-finder.  Id.; Fargnoli v. Massonari, 247 F.3d

34, 38 (3d Cir. 2001)(reviewing whether the administrative law judge's findings "are supported

by substantial evidence" regardless of whether the court would have differently decided the

factual inquiry).

### Plaintiff's Background and Medical Evidence

Plaintiff at the time of filing was 37 years old and is now 40 years old. (R. at 18, 34.)

Plaintiff, who has a twelfth grade education, is divorced and has three children, whose ages were

17, 15, and 11 at the time of plaintiff's hearing before the ALJ.  (R. at 34.)  The two older

children live with plaintiff, while the youngest child lives with his father and visits plaintiff on

the weekends.  (R. at 34.)  On July 4, 2001, plaintiff was involved in an automobile accident in

which she sustained injuries. (R. at 33.)  Before the accident, plaintiff's employment history

included work as a waitress, machine operator, bartender and cook, cashier, substitute preschool

worker and coffee hostess.  (R. at 14.)  After the accident, plaintiff was examined or sought

treatment by at least ten doctors for chronic pain, fatigue, tightening muscles, headaches, and

shooting pains.  (R. at 88-91.)

On July 18, 2001, and October 9, 2001, plaintiff sought treatment by Dr. Multari,

complaining of neck pain and headaches.  (R. at 149-50.)   Dr. Multari prescribed pain

medication and authorized a lumbar spine MRI and head CT scan, both of which were normal.

(R. at 152-54.)

Plaintiff visited Dr. Wassil, a chronic pain doctor, on April 29, 2002, and complained of

neck, back, leg and arm pain.  (R. at 41, 202-03, 308-09.)  Dr. Wassil noted that plaintiff had

moderately limited lumbar spine range of motion, but that her range of motion in her arms and

legs was normal.  (R. at 202-03.)  Dr. Wassil authorized a cervical spine MRI which indicated a

herniated C6-7 disc.  (R. at 141.)  On June 7, 2002, plaintiff complained of neck and low back

pain, and Dr. Wassil prescribed her pain medication.  (R. at 335.)  Plaintiff continued to

complain of pain in her neck, arms, back, and legs while she was under Dr. Wassil's care, and

Dr. Wassil continued to prescribe pain medication to plaintiff. (R. at 305, 318, 332-33.)   Their

physician-patient relationship terminated, however, when Dr. Wassil discharged her from his

practice due to a urine drug screen that tested negative for her prescribed medication.  (R. at 284,

290.)

       Subsequently, plaintiff saw other physicians, including Drs. Yarboro, Bee, Roth,

Wapenski, Kunkle, and Bonier.  (R. at 169, 186, 206, 212, 235-36, 326.)  On October 28, 2002,

Dr. Yarboro performed a consultative disability examination of plaintiff.  He noted plaintiff's

complaints of pain, fatigue and headaches and noted that she had low back tenderness.  (R. at

169, 175-80.)  Dr. Yarboro marked on a checklist functional limitations that would render the

plaintiff disabled.  (R. at 175-80.)

       Dr. Bee, whom plaintiff visited on January 2, 2003, examined plaintiff and characterized

plaintiff's pain complaints as "[t]hings that 1½ years later seem difficult to still be explained by

a motor vehicle accident if her MRI and CAT scan were as normal as she states they are."  (R. at

326.)  Plaintiff told Dr. Bee that she was not "knocked out" by the accident, but was "thrown

around" inside the car. (R. at 326.)

       On March 2, 2003, plaintiff was examined by Dr. Bonier and she complained about back

pain.  (R. at 186.)  After reviewing her previous MRIs, Dr. Bonier found them to be normal and

suggested "a possible psychological component" to plaintiff's pain complaints.  (R. at 186-87)
Dr. Bonier noted that plaintiff displayed Waddell's signs.[1] (R. at 187.)

Plaintiff later visited Dr. Roth several times from October 30, 2003 through January 9,
2004, seeking treatment for headache pain.  (R. at 206, 267.)  Dr. Roth authorized a CT scan,
which came back normal, and deemed plaintiff's headaches to be "of questionable etiology."  (R.
at 258.)  On December 3, 2003, Dr. Wapenski examined plaintiff who complained of whole
body pain and of memory difficulties.  (R. at 212-13.)  Plaintiff told Dr. Wapenski she had
suffered a ten-minute loss of consciousness at the time of her accident.  (R. at 211.)  Dr.
Wapenski attempted memory testing, but found testing to be difficult as plaintiff would not
provide a reliable response.  (R. at 213.)  Dr. Wapenski termed plaintiff's memory complaint
"curious" and suggested a brain MRI scan.  (R. at 214.)

Also on December 3, 2003, plaintiff sought treatment from Dr. Kunkel, complaining of
pain and numbness.  (R. at 235-36.)  After conducting an examination of plaintiff, Dr. Kunkle
noted that plaintiff stated she was unconscious after she hit the car in front of her.  (R. at 235.)
On March 4, 2004, plaintiff was evaluated by Dr. El-Kadi and she reported that the car she was
driving had "flipped several times" and her seatbelt had been broken.  (R. at 198, 212.)

---

[1] Waddell's signs are specific "inappropriate" symptoms and responses that are rare in patients with identified spinal
pathology, but common in patients without significant pathology, including intolerance to treatment and no pain-free
spells.  GUNNAR B.J. ANDERSSON AND THOMAS W. MCNEILL, LUMBAR SPINE SYNDROMES: EVALUATION AND
TREATMENT, 159-60 (1989).

*Discussion*

Under Title XVI of the SSA, a disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Similarly, a person is unable to engage in substantial gainful activity when "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 1382c(a)(3)(B).

In order to make a disability determination under the SSA, a five-step sequential evaluation must be applied. 20 C.F.R. §§ 404.1520, 416.920. The evaluation consists of the following stages: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the claimant's severe impairment meets or equals the criteria of an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if not, whether the claimant's impairment prevents him from performing his past relevant work; and (5) if so, whether the claimant can perform any other work which exists in the national economy in light of his age, education, work experience and residual functional capacity. 20 C.F.R. §§ 404.1520, 416.920; Sykes v. Apfel, 228 F.3d 259, 262-63 (3d Cir. 2000). If the plaintiff fails to meet the burden of proving the requirements in the first four steps, the administrative law judge may find that the plaintiff is not disabled. Burns v. Burnhart, 312 F.3d at 119. The Commissioner is charged with the burden of proof with respect to the fifth step in the evaluation process. Id.

6

In the instant case, the ALJ found: (1) plaintiff has not engaged in substantial gainful activity since the alleged onset of disability on July 4, 2001;[2] (2) plaintiff suffers from a chronic back disorder, which is severe; (3) this impairment does not meet or medically equal one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) plaintiff cannot return to any past relevant work; and (5) there were jobs in the national economy that plaintiff could perform.  (R. at 19.)

Plaintiff raises three arguments: first, that the ALJ erred when he determined that plaintiff's allegations regarding her limitations were not totally credible; second, that the ALJ erred in his analysis of certain medical evidence; and third, that the ALJ erred in determining the plaintiff's residual functioning capacity ("RFC").  These arguments are addressed below.

## I.  There is substantial evidence to support the ALJ's finding that plaintiff's allegations regarding her limitations were not totally credible.

The ALJ found plaintiff's medical history to be "extensive but conflicting," and determined plaintiff's testimony and allegations to be inconsistent, and therefore "not totally credible." (R. at 17.)  Plaintiff argues the ALJ erred in those determinations because there was not substantial evidence to support the ALJ's findings. (Pl.'s Br. at 14.)  The record, however, indicates the contrary.

Since her automobile accident on July 4, 2001, plaintiff visited at least ten physicians and specialists seeking treatment for pain. (R. at 17, 249.)  After undergoing MRI scans, CT scans, and CAT scans, plaintiff's only objective evidence of pain is a possible herniated disc at the C6-7 on a CT dated May 14, 2002, which has not been consistently interpreted as herniated. (R. at

---

[2] The ALJ, however, did note that plaintiff reported working on a part-time basis as a coffee hostess until March, 2002.  (R. at 17.)

194-195, 216-17, 315-17, 326.)  Instead, the overwhelming majority of plaintiff's complaints are subjective.

Subjective complaints of pain are analyzed through a two-step process.  20 C.F.R. §§ 404.1529, 416.929.  First, it must be determined whether the plaintiff has a medically determinable impairment that could "reasonably be expected" to produce the alleged pain.  20 C.F.R. §§ 404.1529(b), 416.929(b).  Next, it must be determined whether the plaintiff's statements about her symptoms are credible in light of the entire record.  20 C.F.R. §§ 404.1529(c), 416.929(c).  The ALJ determined that plaintiff met the first test, finding that she suffered from a chronic back disorder which was "severe." (R. at 16.)

The ALJ also determined, however, that plaintiff failed to meet the second test because of inconsistencies evident throughout the record.  Specifically, the ALJ found, among other things, that plaintiff's description of the automobile accident and her resulting pain have "become increasingly elaborate over time," rendering plaintiff's testimony regarding her limitations "not totally credible." (R. at 14, 17.)  This finding is supported by substantial evidence.

The strongest indications that plaintiff's testimony is "not totally credible" include her failure to take prescribed medications despite complaints of increasing pain over time, and her failure to procure medication specifically for headache pain despite her complaints of headaches to numerous treating physicians and specialists.  (R. at 36, 88, 284, 290, 380.)  There is evidence that plaintiff, after having been prescribed pain medicine by Dr. Wassil, failed a random urine test for that drug and was subsequently dismissed from Dr. Wassil's care. (R. at 284, 290.)

Throughout the record plaintiff complains of suffering from headaches.  Her treating physicians were, however, unable to discover the cause of her headaches and did not prescribe

8

any medication specifically for her alleged headache pain.  Plaintiff testified to the ALJ that she had "a doctor here that I went to and [the doctor] did a [CT] scan and said that I looked perfectly fine." (R. at 60.)  As the ALJ noted, plaintiff was "taking no psychotropic medications and no medication for the headaches she alleges lasting several days," (R. at 16) and that plaintiff "takes no prescription medication specifically for headaches such as Imitrex." (R. at 17.)   Dr. Roth, whom plaintiff visited several times from October 30, 2003 to January 9, 2004, noted that plaintiff's continuing complaints of headaches appeared to be "of questionable etiology."  (R. at 258.)

In fact, several of plaintiff's physicians expressed varying degrees of skepticism regarding plaintiff's pain complaints.  Dr. Bee, whom plaintiff visited in January, 2003, stated plaintiff was "tender just to touch of . . . her neck area but to such light touch it could not possibly be affecting her bones or joints in any way. . . ." (R. at 326.)  On December 3, 2003, plaintiff visited Dr. Wapenski and complained of memory loss.  Dr. Wapenski determined that her complaint was "curious" after attempting to conduct a memory test during which he found plaintiff to be uncooperative.  (R. at 212-14.)  On March 2, 2004, plaintiff consulted Dr. Bonier, who determined plaintiff showed positive Waddell signs, (R. at 187) which indicate specific "inappropriate symptoms and responses that are rare in patients with identified spinal pathology, but common in patients without significant pathology."[3]  Dr. Bonier also suggested a possible psychological component to plaintiff's ongoing pain complaints.  (R. at 187.)

The next indication that plaintiff's testimony is "not totally credible" is the inconsistencies in her testimony regarding her work history.  She testified that she worked regularly from 1991-2001 and suffered no medical impairments during this time.  (R. at 39.)

---

[3]Andersson *supra* note 1.

The record, however, indicates that plaintiff applied for disability benefits in 1995 and 1998, and was on worker's compensation in 1995-1996.  (R. at 17.)  Furthermore, plaintiff's work history indicates that she was employed on a part-time basis in March 2002, approximately six months after the automobile accident.  (R. at 17.)  Additionally, throughout the record the plaintiff mentions or alludes to a pending lawsuit regarding the accident.  (R. at 146, 238, 275, 284.)

Plaintiff strongly contends that the ALJ erred in determining that plaintiff was not "totally credible" because the ALJ's determination of credibility rested solely upon discrepancies in plaintiff's renditions of her automobile accident.  On July 4, 2001, the date of the accident, plaintiff stated to Dr. Multari that she had been a restrained driver in a car that had "spun around," and she specifically denied hitting her head.  (R. at 151.)  In January 2003, plaintiff told Dr. Bee that she was not "knocked out" by the accident, but was instead "thrown around" inside the car.  (R. at 326.)  In December 2003, plaintiff reported to Dr. Wapenski that she experienced a ten-minute loss of consciousness at the time of the accident. (R. at 211.)  In March 2004, however, plaintiff told Dr. El-Kadi that the car she was driving had "flipped several times" and that the seat belt she was wearing had been broken. (R. at 198.)

When viewed apart from other evidence in the record, plaintiff's inconsistent and contradictory descriptions of her automobile accident arguably may not have risen to the level of substantial evidence to find that plaintiff was "not totally credible."  In considering the totality of the evidence, however, this court finds that the ALJ did not rely solely on contradictory descriptions of the accident and that the other evidence described above is "such relevant evidence as a reasonable mind might accept as adequate'" Ventura v. Shalala, 55 F. 3d 900, 901 (3d Cir. 1995)(quoting Richardson v. Perales, 402 U.S. 389 (1971)), which supports the ALJ's determination that the plaintiff's testimony was "not totally credible."

**II. The ALJ did not err in his analysis of certain medical evidence.**

The ALJ characterized plaintiff's medical evidence as "extensive but conflicting," and there is substantial evidence in the record to support this finding. (R. at 14.) Since July 4, 2001, plaintiff has seen a myriad of doctors including "an orthopedist, a neurologist, a neurosurgeon, a maxillary facial specialist, and a rheumatologist without significant findings reported in any of the fields." (R. at 17.) Plaintiff alleges that the ALJ erroneously characterized plaintiff's medical evidence as "extensive but conflicting" solely on the ground that physicians have differed in their interpretation of a CT taken on May 14, 2002. While it is true, as the ALJ noted, that the CT scan has been interpreted differently by physicians, the "conflicting" medical evidence is not limited to the CT scan. (R. at 14.) As the ALJ suggested, the "conflict" lies in the fact that while certain physicians found limitations, these limitations were not supported by objective evidence and there was doubt expressed concerning the cause of her pain complaints.

There is substantial evidence throughout the record to support the ALJ's conclusion that doubt existed concerning the plaintiff's pain complaints. Dr. Bee stated that he "did not see how [plaintiff] would be in this much discomfort 1½ years after an accident [without] finding something objective on any studies." (R. at 326.) Plaintiff has complained of pain in her back and neck, headaches and swelling. (Id.) Since her accident, plaintiff has undergone four MRIs, three cervical X-rays, two lumbar X-rays, and a CT scan, and none of them have offered a definitive explanation of plaintiff's pain complaints. (R. at 140-44, 152-62, 192-95, 199, 200, 205, 207, 216-18, 330-31, 336-37, 348, 355-57.) As was indicated by a random urine test, plaintiff was not taking her prescribed pain medication, yet continued complaining of pain. (R. at

11

284, 290.)  Additionally, there is substantial evidence supporting the ALJ's comment that certain

of plaintiff's physicians were skeptical of plaintiff's pain complaints.  (R. at 187, 214, 258.)

Plaintiff alleges that the ALJ improperly dismissed the opinion of Dr. Yarboro, whom the

ALJ found "inexplicably" limited plaintiff to "lifting 2-3 lbs, standing and walking for 1-2 hours

and sitting for 2 hours." (R. at 16.)  There is substantial evidence to support the weight given by

the ALJ to Dr. Yarboro's opinion.  As defendant correctly asserts, "generally, the longer a

treating source has treated [a plaintiff] and the more time [she has] been seen by a treating

source, the more weight… [is given to the source's medical opinion.]" 20 C.F.R. §§

404.1527(d)(2)(I), 416.927(d)(2)(I).  Dr. Yarboro only examined plaintiff on one occasion, and

there is nothing to indicate that the ALJ improperly weighed the strength of Dr. Yarboro's

opinion.  (R. at 169-176.)

Additionally, Dr. Yarboro examined plaintiff using medical forms requiring him to fill in

blanks and check boxes.  (R. at 175-180.)  As noted in Mason v. Shalala, 994 F.2d 1058, 1065

(3d Cir. 1993), "[f]orm reports in which a physician's obligation is only to check a box or fill in

a blank are weak evidence at best."  The ALJ, in considering all the medical evidence,

determined Dr. Yarboro's opinion to be aberrant, and not connected with other medical evidence

in the record.  Based upon a review of the record, this court concludes that there is substantial

evidence in the record to support the ALJ's finding that the medical evidence was "extensive but

conflicting."


**III. The ALJ did not err in determining plaintiff's RFC.**

The ALJ found that plaintiff had the RFC to perform sedentary work with occasional

postural movements, bending limited to 45 degrees, standing one to two hours total in an eight-

hour day, and allowing for a sit/stand option with sitting up to two hours at a time. (R. at 16.)
The ALJ stated, "I have given weight to the preponderance of the evidence showing very little in
objective findings to account for the degree of the claimant's purported symptoms, yet I have
adopted the most restrictive of the functional assessments in the record." (R. at 16.)  Plaintiff
argues that the ALJ erred in his determination of plaintiff's RFC because he failed to consider
the limitations arising from plaintiff's alleged constant headaches.  Plaintiff also argues that the
ALJ erred in dismissing plaintiff's testimony concerning limitations relating to her ability to sit
and need to lie down and the limitations noted by Dr. Yarboro.

There is substantial evidence that the ALJ included all the limitations supported by the
record in determining plaintiff's RFC.  For the reasons discussed above, there is substantial
evidence to support the ALJ's finding that the plaintiff's testimony was "not totally credible,"
and that the medical evidence was "extensive but conflicting."  The totality of the evidence
supports the ALJ's finding that plaintiff's RFC "makes ample allowance for the claimant's
purported symptoms." (R. at 16.) The severe limitations plaintiff asserted relating to her
headache complaints were not included in the RFC by reason of the ALJ's finding that the
plaintiff was not totally credible, especially given the lack of medication prescribed to treat those
alleged symptoms and Dr. Roth's notation that the headaches appeared to be "of questionable
etiology."  (R. at 258.)  Also, for the reasons discussed above, substantial evidence shows that
the ALJ did not err in the weight given to Dr. Yarboro's opinion in determining plaintiff's RFC,
and in not including all the limitations he noted in the RFC determination.

### Conclusion

Based upon the evidence of record, the parties' arguments and supporting documents
filed in support and opposition thereto, this court concludes that substantial evidence supports the

13

ALJ's finding that plaintiff is not disabled.  The decision of the ALJ denying plaintiff's application for SSI and DIB is affirmed.

Therefore, plaintiff's motion for summary judgment (Docket No. 10) is **DENIED**, and defendant's motion for summary judgment (Docket No. 14) is **GRANTED**.

**IT IS ORDERED AND ADJUDGED** that judgment is entered in favor of defendant, Jo Anne B. Barnhart, Commissioner of Social Security, and against plaintiff, Malinda M. Shaffer.

The clerk shall mark this case as closed.

By the court:


/s/ Joy Flowers Conti
Joy Flowers Conti
United States District Judge

Dated: December 21, 2006

cc: counsel of record